**DARTRON CORPORATION, Plaintiff,**

v.

**UNIROYAL CHEMICAL COMPANY, INC., Defendant.**

No. 1:94–CV–119.

United States District Court,
N.D. Ohio,
Eastern Division.

July 11, 1995.

---

Michael L. Hardy, David Michael Dumas, Thompson, Hine & Flory, Cleveland, OH, for Dartron Corp.

Charles R. McElwee, John Michael Rumpf, Squire, Sanders & Dempsey, Cleveland, OH, for Uniroyal Chemical Co., Inc.

## MEMORANDUM & ORDER

O'MALLEY, District Judge.

This action revolves around the environmental contamination of a piece of industrial property currently owned by plaintiff Dartron Corporation ("Dartron") and previously owned by Uniroyal Chemical Company, Inc. ("Uniroyal"). Dartron alleges that Uniroyal contaminated the property during its 25 years of ownership, and concealed this fact when it sold the property to Dartron in 1979. Dartron brings the following claims against Uniroyal: (1) liability for any response costs required to remediate the property under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 U.S.C. § 9601 *et seq.* ("CERCLA"); (2) injunctive relief requiring Uniroyal to abate the hazardous conditions on the property, pursuant to the Resource Conservation and Recovery Act, 42 U.S.C. 6901 *et seq.* ("RCRA"); (3) breach of the property sale agreement between the parties; (4) breach of an express warranty contained in the agreement; (5) negligence; (6) strict liability for ultrahazardous activities; (7) private nuisance; (8) continuing nuisance; (9) continuing trespass; and (10) declaratory judgment of liability under CERCLA. Uniroyal has counterclaimed against Dartron, alleging that Dartron is liable to *it* for certain response costs it incurred pursuant to CERCLA.

Dartron has moved for summary judgment on its CERCLA claim, and also for summary judgment on Uniroyal's counterclaim (docket no. 31). Uniroyal has separately moved for summary judgment on several of Dartron's pendent state law claims (docket no. 36).

Because the Court finds that Dartron's motion is well-taken in part, summary judgment is **GRANTED** to Dartron on its CERCLA claim; however, summary judgment is **DENIED** to Dartron on Uniroyal's CERCLA counterclaim (docket no. 31). Because the Court finds that Uniroyal's motion is well-taken in part, Uniroyal's motion for summary judgment on Dartron's pendent state law claims (docket no. 36) is **GRANTED IN PART AND DENIED IN PART**; specifically, Uniroyal is granted summary judgment on part of Count V, all of Count VI, and part of Counts VII, VIII, and IX of the amended complaint. The basis for these rulings is set out below.

### I.

The parties agree that the following material facts are not in dispute. In 1947, the Glenn L. Martin Company owned a 12 acre piece of property, located at 900 Fairport Nursery Road, in Fairport Harbor, Ohio ("Property"). Like today, the Property in 1947 was used for, and was surrounded by other properties used for, heavy industry. The Glenn L. Martin Company used the Property to manufacture polyvinyl chloride ("PVC"), a thermoplastic resin used in the production of adhesives and coatings.

In 1949, Uniroyal purchased the Property and continued the PVC manufacturing operations there until 1975.[1] From 1949 through 1961, Uniroyal manufactured its own vinyl chloride monomer ("VC") at the Property as a part of the PVC manufacturing process. After 1961, Uniroyal imported VC to the property via railcar.

Uniroyal's VC and PVC manufacturing processes generated various wastes and by-products, including wastewater. Until 1971, Uniroyal handled its wastewater by transporting it through sewer lines from the man-

---

1. The Property was actually purchased in 1949 by the U.S. Rubber Company, a predecessor to Uniroyal. For ease of reference, Uniroyal and its predecessors are referred to collectively as "Uniroyal."

ufacturing buildings to two unlined settling basins located on the Property. At the settling basins, any VC or PVC solids would settle out of the wastewater, and the remaining liquid would eventually flow through a ditch into the nearby Grand River. Uniroyal used outside contractors to perform the necessary occasional cleaning and maintenance of the two settling basins.[2] During these cleanings, the contractors would remove a sludge-like waste material from the basins. Some of this sludge would sometimes spill on the ground during cleaning. In 1971, Uniroyal built a wastewater treatment plant, and thereafter no longer transported its manufacturing effluent into the two settling basins.

In 1975, Uniroyal ceased manufacturing PVC at the Property altogether. In 1979, Uniroyal sold the Property to Dartron pursuant to a sales agreement ("Agreement").[3] The Agreement contained a provision stating that the Property was to be sold " 'As-is,' ... provided, however, that [Uniroyal] shall not leave any hazardous or toxic material on or under the [Property]." Agreement at ¶ 3(e). After purchasing the Property, Dartron began to operate a ferrous scrap metal recycling business. Dartron never produced or used VC or PVC at the Property. Although Uniroyal sold the Property to Dartron in 1979, Uniroyal continues to own other pieces of industrial real estate contiguous to the Property, referred to below as the "Adjacent Properties."

In 1990, Dartron retained Woodward–Clyde Consultants ("WCC"), an environmental consulting firm, to inspect the Property for the presence of asbestos. In conjunction with the asbestos inspection, Dartron also asked WCC to perform a limited environmental assessment of the Property. During the course of its assessment, WCC located an abundance of friable asbestos in the buildings on the Property, and also determined that the likelihood of the presence of other hazardous substances in and on the Property was high.

Dartron followed up on WCC's report by hiring G.E.M. Testing & Engineering Labs ("GEM") in 1991 to perform a more complete environmental assessment of the Property. GEM's assessment indicated that the soil at the Property contained significant concentrations of, among other things, arsenic, barium, chromium, lead, vinyl chloride, methyl ethyl ketone, dichlorobenzene, dichloroethane, and trichloroethane. GEM's assessment also indicated that groundwater at the Property contained significant concentrations of dichloroethane, vinyl chloride, and carbon tetrachloride. All of these materials, as well as asbestos, are "hazardous substances" under CERCLA, 42 U.S.C. § 9601(14), and the applicable federal regulations.

Dartron informed Uniroyal of the results of GEM's site assessment and demanded that Uniroyal clean up the property and provide other compensation. Uniroyal requested permission to have its own consultant, Burlington Environmental ("Burlington"), test the Property for hazardous substances; Dartron agreed. Although Burlington's assessment yielded somewhat different results, it verified the presence of many of the hazardous substances at the Property, and in fact uncovered the presence of another hazardous substance, mercury. Uniroyal, however, has refused to remediate the environmental contamination or compensate Dartron. Uniroyal's refusal is apparently based in part on its belief that Dartron may have caused some of the contamination itself: in its counterclaim, Uniroyal alleges that "[u]pon information and belief, Dartron's handling and processing of the scrap material and equipment also involves the use of other materials which constitute or contain CERCLA 'hazardous substances.' " Counterclaim at ¶ 7. Dartron denies this allegation, and Uniroyal has presented no evidence—either contained in Burlington's environmental assessment or otherwise—supporting this allegation. Uniroyal also contends that the old owner of the Property, the Glenn L. Martin Company, may have caused the environmental contamination; again, however, no party has presented

---

2. None of these outside contractors have been made a party to this action.

3. Uniroyal actually sold the Property to Dart Cartage, a predecessor in interest to Dartron. For ease of reference, Dartron and its predecessors are referred to collectively as "Dartron."

any evidence on this question. This lawsuit is brought to determine who must pay for the cleanup of the Property, and whether any other damages are appropriate.[4]

## II.

Federal Rule of Civil Procedure 56(c) governs summary judgment motions and provides:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. . . .

Rule 56(e) specifies the materials properly submitted in connection with a motion for summary judgment:

Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. . . . The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denial of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

However, the movant is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In reviewing summary judgment motions, this Court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *White v. Turfway Park Racing Assn., Inc.*, 909 F.2d 941, 943–44 (6th Cir. 1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252, 106 S.Ct. at 2512.

Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552. Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir.1989) (citing *Frito–Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C.Cir.1988)). The non-moving party is under an affirmative duty to point out specific facts in the record as it has been established which create a genuine issue of material fact. *Fulson v. City of Columbus*, 801 F.Supp. 1, 4 (S.D.Ohio

---

**4.** The District Court of Massachusetts has described nicely the species of lawsuit of which this case is a member as follows:

In a society where toxic chemicals are generated daily, some landowners deposit such materials on their own property. Instead of removing the materials, they remove themselves, leaving subsequent owners to contend with the contamination. . . . [CERCLA] allow[s] an in-

dividual landowner to bring an action against another responsible for the contamination in order to recover the costs of cleanup. [State law may] also entitle[ ] a landowner, upon competent proof, to recover damages to the value of the property resulting from the contamination.

*One Wheeler Road Assocs. v. Foxboro Co.*, 843 F.Supp. 792, 793 (D.Mass.1994).

1992). The non-movant must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Id.*

## III.

### A. The Parties' CERCLA Claims

In 1980, Congress enacted CERCLA to "provide a comprehensive response to the problem of hazardous substance release." *Wickland Oil Terminals v. Asarco, Inc.,* 792 F.2d 887, 890 (9th Cir.1986). Congress hoped to achieve this goal through several mechanisms. For example, CERCLA authorizes the President to require the United States Attorney General to seek judicial relief from the actual or threatened release of a hazardous substance. 42 U.S.C. § 9606. The federal government can clean up environmental contamination using monies contained in the "Superfund" and then seek reimbursement from the party responsible for the pollution. 26 U.S.C. § 9507. Similarly, state or local governments may clean up hazardous wastes and obtain reimbursement from the responsible party. 42 U.S.C. § 9607(a)(1–4)(A). Finally, CERCLA also authorizes private parties who have incurred "response costs" for environmental cleanup to seek recovery from the party responsible for depositing the hazardous wastes. 42 U.S.C. § 9607(a)(1–4)(B). It is pursuant to this last mechanism that Dartron brings its CERCLA claims against Uniroyal.

■ To succeed on a claim under the private action provisions of CERCLA, the private party plaintiff must show that: (1) the property on which the hazardous substances were contained was a "facility," under CERCLA's definition of that term; (2) a release of a hazardous substance from the facility occurred, or is threatened; (3) the release or threatened release caused the plaintiff to incur response costs necessary and consistent with the National Contingency Plan; and (4) the defendant was one of the statutory classes of persons subject to liability. *Donahey v. Bogle,* 987 F.2d 1250, 1255

(6th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 636, 126 L.Ed.2d 594 (1993).

### 1. Dartron is Entitled To Summary Judgment On Its CERCLA Claim.

Dartron argues that the material facts are not in dispute, and it has proved all the necessary elements of its CERCLA claim. Uniroyal does not contest the first three elements of Dartron's CERCLA claim, leaving undisputed the facts that: (1) the Property is a "facility;" (2) a "hazardous substance" has been "released" on the Property; and (3) Dartron has incurred recoverable "response costs." Uniroyal only disputes the fourth element of Dartron's CERCLA claim, that Uniroyal is included in one of the classes of persons subject to liability.

Regarding the fourth element, CERCLA imposes liability for response costs incurred to remediate and remove hazardous substances upon four classes of "covered persons:" (1) current owners or operators of a facility at which hazardous substances were disposed; (2) any person who owned or operated a facility at the time of disposal of a hazardous substance; (3) any person who arranged for disposal, or arranged for transport for disposal, of a hazardous substance at a facility, also known as "generators;" and (4) any person who accepted hazardous substances for transport for disposal at a facility, also known as "transporters." 42 U.S.C. § 9607(a)(1)–(4).[5] Dartron contends that the undisputed facts show Uniroyal falls within the second category. Uniroyal argues that a genuine issue of material fact regarding this question remains.

■ The essence of Uniroyal's argument is that there is "no direct evidence that any disposal of hazardous substances ever occurred during the period of time when [Uniroyal] owned or operated the Property." Uniroyal's Brief in Opposition at 3. On the face of the record presented to this Court, however, that position is simply untenable. It is uncontested that Uniroyal conveyed its manufacturing effluent through sewer lines to settling basins, all on the Property. It is

---

5. The term "person," within the meaning of 42 U.S.C. § 9607(a), includes successor corpora-

tions. *Anspec Co. v. Johnson Controls, Inc.,* 922 F.2d 1240, 1247 (6th Cir.1991).

uncontested that sludge precipitated out of the effluent at these settling basins, and that the sludge was occasionally spilled on the ground during cleaning. It is uncontested that this sludge contained high levels of mercury and vinyl chloride, among other things, both of which are defined as hazardous and toxic substances under CERCLA. 40 C.F.R. § 261.24. And, it is uncontested that the highest levels of mercury and vinyl chloride are found along Uniroyal's old sewer lines. Nonetheless, Uniroyal insists there is no direct evidence that any hazardous substances were placed on the Property *during the 30 years of its ownership.* Uniroyal goes so far as to suggest the hazardous substances on the Property *may* have been released only by the Glenn L. Miller Company or by Dartron, and not by it.

Given the undisputed facts, Uniroyal's claim that a fact finder could conclude Uniroyal did not own or operate a facility on the Property during a time of disposal of hazardous substances rings hollow. Indeed, the opposite conclusion is inescapable. Uniroyal presents no evidence at all that any of the hazardous substances could have come from Dartron's operations. Nor does Uniroyal muster any evidence that the presence of the contamination can be attributed wholly to the Glenn L. Miller Company's two years of PVC manufacturing at the Property, and not to Uniroyal's quarter century of PVC manufacturing there. Uniroyal cannot avoid judgment merely by raising unlikely possibilities unsupported by evidence. *60 Ivy Street Corp. v. Alexander,* 822 F.2d 1432, 1435 (6th Cir.1987) (non-moving party "is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial"). Uniroyal is under an affirmative duty to point out specific facts in the record as it has been established which create a genuine issue of material fact; it is not enough for Uniroyal to show that there is some metaphysical doubt as to material facts. *Fulson v. City of Columbus,* 801 F.Supp. 1, 4 (S.D.Ohio 1992).

Summary judgment is appropriate whenever "there is only one reasonable conclusion to be drawn" from the evidence. *Cook v. Providence Hosp.,* 820 F.2d 176, 179 (6th Cir.1987). That the issue of whether Uniroyal disposed of hazardous wastes on the Property is raised in a summary judgment context neither mandates nor permits this Court to turn a blind eye to the obvious, especially in the face of no showing to the contrary. The only reasonable conclusion a fact finder could draw in this case, given the undisputed facts, is that Uniroyal owned or operated a facility at the time of disposal of a hazardous substance. Because there is no genuine issue regarding whether Dartron has proved all the elements of its CERCLA claim against Uniroyal, Dartron is entitled to summary judgment.

*2. Dartron is Not Entitled To Summary Judgment On Uniroyal's CERCLA Counterclaim.*

As noted above, one of the classes of "covered persons" upon which CERCLA imposes liability is current owners or operators of a facility at which hazardous substances were disposed. 42 U.S.C. § 9607(a)(1). Dartron clearly fits this description. Thus, Uniroyal counterclaims that *Dartron* is liable to *it* for the cost it incurred in making its own investigation of the soil and water at the Property. Dartron responds that the expenditures incurred by Uniroyal are not "necessary response costs," and thus that Uniroyal cannot meet the third required element of a CERCLA claim. Dartron insists that there is no genuine issue of material fact on this issue, so that it is entitled to summary judgment as a matter of law on Uniroyal's counterclaim.

The basis of Dartron's argument that Uniroyal did not incur "response costs" is that Uniroyal's environmental site assessment was done *solely* to check on the accuracy of Dartron's site assessment. Dartron points out that Burlington, Uniroyal's environmental consultant, merely resampled soil in the same areas of the Property as had GEM, Dartron's consultant. Dartron also notes that Burlington simply re-used the groundwater monitoring wells that GEM had already drilled, and checked for the same contaminants. Dartron concludes that Uniroyal's costs of site assessment were incurred "solely in order to defend a potential CERCLA claim" and are, thus, outside the scope of

recoverable response costs. Brief in Support at 8 (citing *United States v. Hardage*, 982 F.2d 1436, 1447–48 (10th Cir.1992)).

Uniroyal responds that it did not incur the cost of Burlington's site assessment "*solely*" to check GEM's results, for the purpose of litigating this case. Uniroyal points out that Burlington believed GEM's procedures were flawed and not in accordance with Environmental Protection Agency protocols, so that a more reliable assessment was required to formulate a remediation plan. Uniroyal adds that the law in this Circuit holds that the costs of site investigation and testing are properly included as necessary costs of response recoverable under CERCLA. *United States v. Bogas*, 920 F.2d 363, 369 (6th Cir. 1990) ("[c]leanup costs recoverable under CERCLA include not only the direct cost of removal, but of site testing, studies, and similar 'response costs,' direct and indirect"); *see also Williams v. Allied Automotive, Autolite Div.*, 704 F.Supp. 782, 784 (N.D.Ohio 1988) ("costs of activities useful and necessary to the formulation of the proposed remedy are conceivably recoverable as part of the response costs").

■ After reviewing the evidence, the Court concludes that there is a genuine issue of material fact regarding this issue. It is not possible to say a fact finder could only reasonably conclude that Uniroyal incurred its site assessment costs solely to defend against a CERCLA claim. The facts also permit a conclusion that Uniroyal's site assessment expenditures were a necessary and proper cost of response, incurred to determine what remediation is required. Accordingly, the Court must deny Dartron's motion for summary judgment on Uniroyal's counterclaim on this ground.

Having reached this conclusion, the Court adds an important observation. Given the current state of the record, it appears that summary judgment in Dartron's favor on Uniroyal's CERCLA counterclaim *may be* appropriate on another ground. "Congress intended that *those responsible for problems caused by the disposal of chemical poisons*

bear the costs and responsibility for remedying the harmful conditions they created." *United States v. Akzo Coatings of America, Inc.*, 949 F.2d 1409, 1418 (6th Cir.1991) (emphasis added) (quoting *United States v. Reilly Tar & Chemical Corp.*, 546 F.Supp. 1100, 1112 (D.Minn.1982)). "[T]he cost of cleaning up hazardous waste sites is to be borne by those responsible for the wastes." *Bogas*, 920 F.2d at 369. *See also* 42 U.S.C. § 9613(f)(1) (if more than one party is responsible for the release of hazardous substances, "the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate"). Even assuming Uniroyal's expenditures in assessing the Property were incurred with the ultimate purpose of formulating a plan to remove and remediate the environmental contamination, and thus constitute necessary response costs, the only evidence presented *so far* suggests that those costs are properly Uniroyal's to bear. As noted above, it is uncontradicted that Uniroyal is responsible for hazardous wastes present at the Property. Uniroyal has mustered no evidence that Dartron is also responsible for the presence of any contaminants, nor is there any concrete evidence that the Glenn L. Miller Company is also responsible for the presence of any contaminants. If the evidence ultimately shows that no other entity besides Uniroyal deposited hazardous substances in or on the Property, then it is Uniroyal, and not Dartron or the Glenn L. Miller Company, that must bear the burden of paying for the necessary costs of response.

Because the question of whether other entities besides Uniroyal are responsible for the presence of contaminants on the Property was not addressed squarely in the parties' motions, it would be premature for the Court to resolve the issue now. However, this issue will necessarily be ripe for decision at trial,[6] and could possibly be made ripe before trial through Dartron's submission of another motion for summary judgment. Nonetheless, the Court must presently deny Dar-

---

**6.** It appears that any argument Uniroyal may have that it is jointly and severally liable with some other entity for CERCLA response costs must be raised at the trial of this case, or else be forfeited under principles of res judicata and collateral estoppel.

738

tron's motion for summary judgment on Uniroyal's CERCLA counterclaim.

### B. Dartron's Pendent State Law Claims.

In addition to the CERCLA claim brought by Dartron against Uniroyal, Dartron brings several pendent state law claims. Uniroyal argues that it is entitled to judgment as a matter of law on several of these claims. The Court agrees in part with Uniroyal, as set out below.

#### 1. Count V—Negligence.

In Count V of the amended complaint, Dartron alleges that Uniroyal is liable to Dartron for negligently contaminating the Property. Dartron alleges that Uniroyal breached a duty it owed to Dartron not to contaminate the Property, and alleges that this duty attached to Uniroyal in two distinct ways: in connection with Uniroyal's role as prior owner of the Property, and also in connection with its role as owner of the Adjacent Properties.

■ There is no authority under Ohio law for the proposition that a landowner owes a duty of care to a subsequent owner of the same land not to improperly dispose of hazardous wastes on the property. The vast majority of courts that have examined this issue have concluded that such a duty does not exist under common law. *See, e.g., G.J. Leasing Co. v. Union Elec. Co.*, 825 F.Supp. 1363, 1372 (S.D.Ill.1993); *Wilson Auto Enterps., Inc. v. Mobil Oil Corp.*, 778 F.Supp. 101, 104 (D.R.I.1991); *John Boyd Co. v. Boston Gas Co.*, 775 F.Supp. 435, 438 (D.Mass. 1991) ("landowner owes no common law duty to subsequent owners with respect to the manner in which the land had been maintained prior to sale"); *Rosenblatt v. Exxon Co., U.S.A.*, 335 Md. 58, 642 A.2d 180, 189 (1994) (holding that commercial property owner cannot assert claims premised on environmental contamination against former owner under theories of negligence, strict liability, trespass, or nuisance); *Hydro–Manufacturing, Inc. v. Kayser–Roth Corp.*, 640 A.2d 950 (R.I.1994) (former landowner cannot be liable for contamination of property under theories of negligence, strict liability, or nuisance).

Indeed, this Court has itself found that Ohio does not recognize such a duty to a successor landowner. As noted by Judge Aldrich in *Ameritrust Company, N.A., v. The Lamson & Sessions Co.*, No. 92–CV–87, slip op. (N.D.Ohio May 21, 1992) ("*Lamson & Sessions*"):

> It is not for this Court to create or extend Ohio law; that is the bailiwick of Ohio's own courts and legislature. Moreover, other federal courts that have faced similar arguments have dismissed this type of negligence claim:
>
> > The law imposes various duties on the owners and occupiers of land. ...
> >
> > This Court, however, is aware of no legal authority which would support the imposition of a duty on an owner of land to maintain his or her property in a certain condition or to refrain from any activity affecting the property which would extend to future owners of the land. The imposition of such a duty would be unreasonable because such future owners may not be known or even contemplated at the time the landowner creates or maintains a condition on his or her property.

*Id.* at 10–11 (quoting *Wellesley Hills Realty Trust v. Mobil Oil Corp.*, 747 F.Supp. 93, 100 (D.Mass.1990)). This Court agrees, and holds that Uniroyal is entitled to summary judgment on Dartron's claim of negligence against Uniroyal-as-grantor.

As noted, however, Dartron also brings its negligence claims against Uniroyal-as-neighbor. Dartron bases this Uniroyal-as-neighbor claim on a separate allegation that Uniroyal stored hazardous or toxic materials at the Adjacent Properties, and those materials flowed into or onto the Property. There exists ample authority for the proposition that a landowner does owe a duty to its neighbors not to improperly dispose of hazardous wastes. *E.g., Niecko v. Emro Mktg. Co.*, 973 F.2d 1296, 1303 (6th Cir.1992); *Soo Line R.R. Co. v. B.J. Carney & Co.*, 797 F.Supp. 1472, 1488 (D.Minn.1992).

■ Uniroyal does not challenge the legal sufficiency of this "negligent neighbor" claim; rather, Uniroyal contends that the undisputed facts show that all surface water and

groundwater flow *from* the Property *toward* the Adjacent Properties, not vice versa. In support of this allegation, Uniroyal presents two affidavits: one from an expert hydrologist retained by Uniroyal, Mr. Hanish, and another from a Uniroyal employee, Mr. Kenney. Mr. Hanish avers in his opinion that "the groundwater flow direction within the boundary of the [Property] is generally radial, with a groundwater high near the center of the [Property]. Therefore, . . . groundwater likely flows in all directions from the [Property] to surrounding adjacent properties." Hanish Affid. at ¶ 4. Mr. Hanish adds that his conclusion is not inconsistent with the groundwater flow data collected by GEM, Dartron's environmental consultant, although he admits that GEM's own conclusion was that the groundwater flow was "generally to the southeast," not radial. *Id.* at ¶ 6. As for Mr. Kenney, who is in charge of Uniroyal's "stormwater discharge system," he avers that "surface water runoff from the area of [Uniroyal's present] manufacturing operations does not flow onto the [Property]. Kenney Affid. at ¶ 2, 3.

In the face of this evidence that Uniroyal-as-neighbor has not permitted any hazardous substances to flow onto the Property, Dartron responds with the deposition testimony of Mr. Kenney. In contradiction to his affidavit, Mr. Kenney's testimony can *possibly* be read to state that a surface stream, which has tested positively for the presence of mercury, runs from a waste disposal site at the Adjacent Properties across the Property. If this is indeed the meaning of Mr. Kenney's testimony, a genuine issue of material fact obviously exists. Unfortunately, it is difficult to understand exactly what Mr. Kenney meant in this portion of his deposition, because Mr. Kenney was referring to maps that were not provided to the Court. It is unclear whether the waste disposal site to which Mr. Kenney is referring in his deposition is located on the "Adjacent Properties," as that term is defined, or merely other neighboring properties not owned by Uniroyal.

Given this confusion, the Court is compelled at this time to find that Mr. Kenney's deposition testimony, together with Mr. Hanish's affirmation that his conclusion regard-ing groundwater flow direction is inconsistent with GEM's conclusion, sufficiently raises a genuine issue of fact to preclude entry of summary judgment. If Uniroyal believes that further briefing on this issue will clarify the facts sufficiently to permit entry of summary judgment, the Court will entertain another motion. Given the current state of the record, however, Uniroyal is not entitled to summary judgment on Dartron's claim of negligence of Uniroyal-as-neighbor.

*2. Count VI—Strict Liability for Ultra-hazardous Activity.*

In Count VI, Dartron claims that Uniroyal is strictly liable to it because Uniroyal's PVC manufacturing process constituted an abnormally dangerous activity. Dartron points to the Restatement (Second) of Torts § 519(1) (1977), which states: "one who carries on an abnormally dangerous activity is subject to [strict] liability for harm to the person, land, or chattels of another resulting from the activity, although he exercised the utmost care to prevent the harm." *Id.* § 519(1) at 34. Ohio courts appear to follow this section of the Restatement. *See Doherty v. Ohio State Univ.*, No. 89AP–746, 1990 WL 86772, 1990 Ohio App. LEXIS 2696 at *6 n. 1 (Ohio Ct.App. June 26, 1990) ("Although Restatement Section 519 has never been explicitly adopted by the courts of Ohio, the rule nevertheless appears to be an accurate restatement of Ohio law on this issue."); *Lamson & Sessions* at 11–12 (following *Doherty*). Whether an activity is abnormally dangerous is determined by reference to six factors, which are set out in § 520 of the Restatement. *Id.* § 520 at 36.

Courts applying Ohio law have generally limited application of strict liability for ultrahazardous activities to instances of the storage or use of explosives. *E.g., Walczesky v. Horvitz Co.*, 26 Ohio St.2d 146, 269 N.E.2d 844 (1971) (blasting); *Louden v. Cincinnati*, 90 Ohio St. 144, 106 N.E. 970 (1914) (blasting); *Bradford Glycerine Co. v. St. Mary's Woolen Mfg. Co.*, 60 Ohio St. 560, 54 N.E. 528 (1899) (storage of explosive substance). An exception to this general rule is found in *Crawford v. National Lead Co.*, 784 F.Supp. 439, 442–43 (S.D.Ohio 1989), where the court found that uranium production is an abnor-

mally hazardous activity because it meets all six factors of § 520, and because the Restatement specifically comments upon the abnormal dangerousness of activities connected with atomic energy production. Nonetheless, there is no reason to believe that Ohio courts would limit the application of § 519 to cases involving explosives and atomic energy. *Cf. Fletcher v. Tenneco, Inc.,* No. 91–118, 1993 WL 86561 at *5, 1993 U.S.Dist. LEXIS 3054 at *16–*18 (E.D.Ky. Feb. 22, 1993) (noting that, even though Kentucky courts have applied strict liability for ultrahazardous activities almost exclusively to blasting cases, a court applying Kentucky law should not decide the question by category of activity but "on the specific facts of the case"). This Court finds that if the wastewater disposal activities of Uniroyal were in fact abnormally dangerous, as determined with reference to the six factors outlined in § 520 of the Restatement, Ohio courts would then apply § 519 to hold Uniroyal strictly liable for consequential damages.

This leads to the question of whether Uniroyal's activity on the Property was, in fact, abnormally dangerous. It is Uniroyal's activity of disposal of its manufacturing waste, and not merely its production of PVC, that this Court must analyze for indicia of abnormal dangerousness. *Fletcher,* 1993 WL 86561 at *7 n. 12, 1993 U.S.Dist. LEXIS 3054 at *24 n. 12 ("[i]t is [the] waste disposal techniques which are alleged to be ultrahazardous," not the "entire activity of [PVC manufacturing]"). Oddly, Dartron fails to address the six factors set out in § 520 of the Restatement or otherwise present argument regarding the dangerousness of Uniroyal's waste disposal activity. There is certainly an argument to be made that Uniroyal's activity does show indicia of being abnormally dangerous. *See id.* at *7–10, 1993 U.S.Dist. LEXIS 3054 at *25–*34 (collecting cases in which courts concluded that waste disposal was abnormally dangerous, justifying imposition of strict liability).

■ Under the circumstances presented in this case, however, the Court need not undertake an analysis of the factors set out in § 520. Even if Uniroyal's past waste disposal activities were ultrahazardous under the factors set out in § 520, Dartron's claim must fail as a matter of law on other grounds. There is no precedent in Ohio or elsewhere for applying § 519 *in the context of successive property ownership.*

As stated in *Lamson & Sessions:*

Ohio law does not hold that a landowner can hold a previous owner of the land strictly liable for ultrahazardous activities in which the previous owner was engaged during his tenure on the property. To allow such a cause of action would stretch Ohio precedent beyond recognition.

*Id.* at 12. Other courts agree that application of strict liability for ultrahazardous activities is inappropriate when attempted by a subsequent landowner against a prior landowner. *See, e.g., Rosenblatt v. Exxon Co., U.S.A.,* 335 Md. 58, 642 A.2d 180, 188 (1994) ("It would be illogical to interpret [§ 519] to hold the actor strictly liable for harm to the actor's own property in those cases in which, at some time thereafter, the property changes hands."); *Futura Realty v. Lone Star Bldg. Centers (Eastern), Inc.,* 578 So.2d 363, 365 (Fla.Dist.Ct.App.), *review denied,* 591 So.2d 181 (Fla.1991) (refusing to extend strict liability theory because "the commercial property vendor owes no duty for damage to the land to its vendee"); *Wellesley Hills Realty Trust v. Mobil Oil Corp.,* 747 F.Supp. 93, 102 (D.Mass.1990) (application of strict liability in favor of a landowner against a former landowner would be "nonsensical"). *But see Rosenblatt,* 642 A.2d at 186–87 (reviewing three cases where the court allowed a landowner to pursue a strict liability claim against a prior landowner, based on environmental contamination).

In sum, this Court finds that, regardless of whether Uniroyal's past waste disposal practices on the Property qualify as ultrahazardous activity, imposition of strict liability in favor of Dartron by virtue of Dartron's standing as subsequent Property owner must fail as a matter of law. Accordingly, Uniroyal is granted summary judgment on this claim.[7]

7. Unlike its other claims based on state law,    Dartron makes no allegations that Uniroyal en-

*3. Counts VII and VIII—Private and Continuing Nuisance.*

■ In Count VII, Dartron claims that Uniroyal's release of hazardous substances in and on the Property constitutes a private nuisance, which has interfered with Dartron's use and enjoyment of the Property. In Count VIII, Dartron adds a similar claim of continuing nuisance. Uniroyal objects, once again quoting from an opinion authored by Judge Aldrich. In *Lyden Co. v. Citgo Petroleum Corp.*, No. 91–CV–1967, 1991 WL 325786, 1991 U.S.Dist. LEXIS 19783 (N.D.Ohio Dec. 15, 1991) (*"Lyden "*), the court stated:

> Private nuisance doctrine was not designed to permit "a purchaser of real property to recover from the seller ... for conditions existing on the very land transferred." Rather, liability for creating a nuisance requires a "finding that [the defendant's] conduct violates a protected interest of the *neighbor-plaintiff.*" A cause of action for private nuisance does not contemplate a vendee suing a land vendor for the vendor's past conduct on the land. To extend the historical role of nuisance law to allow such a cause of action "is particularly hazardous in an area, such as environmental pollution, where Congress and the state legislatures are actively seeking to achieve a socially acceptable definition of rights and responsibilities."

*Id.* at *6, 1991 U.S.Dist. LEXIS 19783 at *16 (citations omitted) (emphasis added) (quoting *Philadelphia Elec. Co. v. Hercules, Inc.*, 762 F.2d 303 (3rd Cir.1985), *cert. denied,* 474 U.S. 980, 106 S.Ct. 384, 88 L.Ed.2d 337 (1985)). Every other case that this Court has found also rejects private nuisance claims brought by landowners against their predecessors in title. *See, e.g., Wilson Auto Enterps., Inc. v. Mobil Oil Corp.*, 778 F.Supp. 101, 106 (D.R.I.1991) ("A buyer of property cannot assert a private nuisance claim against a seller ... for contamination that occurred before the sale"); *Rosenblatt v. Exxon Co., U.S.A.,* 335 Md. 58, 642 A.2d 180 (1994); *Wellesley Hills Realty Trust v. Mobil Oil Corp.,* 747 F.Supp. 93, 98–99 (D.Mass.

1990) ("a vendee of land does not have a private nuisance action against a vendor for its contamination of the property prior to the sale").

The Court agrees with the above cases and finds that Uniroyal is entitled to summary judgment on Dartron's nuisance claims against Uniroyal *in its role as prior owner of the Property.* This ruling, however, does not end the Court's analysis of Dartron's nuisance claims. Like its negligence claim, Dartron brings its nuisance claims against Uniroyal not only as prior Property owner, but also as owner of the Adjacent Properties. In this regard, Dartron alleges that Uniroyal stored hazardous or toxic materials at the Adjacent Properties and those materials flowed into or onto the Property.

■ For the reasons stated above in the context of Dartron's negligence claims, the Court finds that a genuine issue of material fact remains as to whether Uniroyal-as-neighbor breached a duty owed to Dartron not to permit a private or continuing nuisance. The evidentiary record currently contains a genuine issue of fact with regard to the question of whether Uniroyal's activities on the Adjacent Properties created a nuisance that interferes with Dartron's use and enjoyment of the Property. Accordingly, Uniroyal is not entitled to summary judgment on Dartron's claims of nuisance, to the extent those claims stem from Uniroyal's role as owner of the Adjacent Properties.

*4. Count IX—Continuing Trespass.*

■ The Court's analysis of Dartron's continuing trespass claim parallels its analysis of Dartron's negligence and nuisance claims. A cause of action for trespass does not contemplate a vendee suing a land vendor for the vendor's past conduct on the land. To extend the historical role of trespass law to allow such a cause of action raises the same concerns as would extension of the historical role of nuisance law. *Philadelphia Elec. Co. v. Hercules, Inc.,* 762 F.2d 303, 315 (3rd Cir.1985), *cert. denied,* 474 U.S. 980, 106 S.Ct. 384, 88 L.Ed.2d 337 (1985); *see also*

---

gaged in ultrahazardous activity on the Adjacent Properties. Thus, with reference to Count II,

Dartron draws no distinction between Uniroyal as neighbor and Uniroyal as previous owner.

*One Wheeler Rd. Assocs. v. Foxboro Co.,* 843 F.Supp. 792, 797 (D.Mass.1994) ("a former owner of property owes no duty to subsequent owners of property and any contamination left on the property by that owner is not a nuisance or a continuing trespass").

A cause of action for trespass *does* contemplate, however, a party suing his neighbor for unauthorized, intentional entry upon the party's land. *See id.* at 797–98 (contrasting trespass claim against preceding landowner with trespass claim against neighbor); *Soo Line R.R. Co. v. B.J. Carney & Co.,* 797 F.Supp. 1472, 1488 (D.Minn.1992) (allowing trespass and nuisance claims premised on environmental contamination against owner of adjacent property); *Brown v. Scioto Cty. Bd. of Comm'rs,* 87 Ohio App.3d 704, 716, 622 N.E.2d 1153 (1993) (setting out elements of tort of trespass). Dartron has set out a prima facie case of trespass by Uniroyal-as-neighbor. Although Uniroyal cannot be held liable as a matter of law for trespass in its role as prior landowner, it can, under an appropriate set of circumstances, be held liable in trespass under its role as owner of the Adjacent Properties. Accordingly, Uniroyal is entitled to summary judgment on Dartron's trespass claim stemming from Uniroyal's role as prior owner of the Property. Given the current evidentiary record, however, Uniroyal is not entitled to summary judgment on Dartron's trespass claim stemming from Uniroyal's role as owner of the Adjacent Properties.

### IV.

To summarize, Uniroyal is granted summary judgment on Dartron's claim of strict liability (Count VI). Uniroyal is also granted *partial* summary judgment on Dartron's claims of negligence (Count V), nuisance (Counts VII & VIII), and trespass (Count IX), in that any claims stemming from Uniroyal's prior ownership of the Property fail as a matter of law. However, summary judgment on Counts V, VII, VIII, and IX is denied insofar as Dartron's claims relate to Uniroyal's ownership of the Adjacent Properties.

In addition, Dartron is granted summary judgment on its claim for CERCLA response costs (Count I), but Dartron is denied summary judgment on Uniroyal's CERCLA counterclaim. Dartron is also granted summary judgment on its claim for declaratory relief (Count X), pursuant to 42 U.S.C. §§ 9607(a) & 9613(f), as follows: Uniroyal is jointly and severally liable for all costs of response, consistent with the national contingency plan, incurred and to be incurred by Dartron in cleaning up the contamination at the Property. Any other entities with whom Uniroyal may be jointly and severally liable is an issue to be decided at trial or by separate motion.

The Court has no opinion regarding the following of Dartron's claims, which the parties did not address in their motions: claim for injunctive relief pursuant to the Resource Conservation and Recovery Act (Count II); claim for breach of the property sale Agreement (Count III); and claim for breach of express warranty (Count IV).

Finally, if the parties wish to pursue further, before trial, the factual questions identified by the Court above as insufficiently presented for purposes of summary judgment, the Court will entertain suggestions for a briefing schedule at the upcoming status conference.

**IT IS SO ORDERED.**