**AFFILIATED FM INSURANCE COMPANY, Plaintiff–Appellee,**

v.

**OWENS–CORNING FIBERGLAS CORPORATION, Defendant–Appellant.**

No. 92–4116.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 8, 1993.

Decided Feb. 14, 1994.

---

Donald B. Hilliker (argued), William M. Cohn (briefed), Michael M. Marick, Pope & John, Chicago, IL, and H. Buswell Roberts, Jr., Nathan & Roberts, Toledo, OH, for plaintiff-appellee.

Mitchell F. Dolin (argued and briefed), Richard D. Shore, Covington & Burling, Washington, DC and Kevin E. Joyce and William M. Connelly, Connelly, Soutar & Jackson, Toledo, OH, for defendant-appellant.

Before: MERRITT, Chief Judge; and NORRIS and SUHRHEINRICH, Circuit Judges.

SUHRHEINRICH, Circuit Judge.

Affiliated FM Insurance Company ("Affiliated FM") filed suit seeking a declaratory judgment as to its obligations under the insurance policy it issued to Owens–Corning Fiberglas Corporation ("Owens–Corning"). The parties filed cross-motions for summary judgment and the district court granted judgment to Affiliated FM, declaring that Affiliated FM Insurance was not obliged under its policy to pay attorney fees or other defense costs incurred by Owens–Corning in its defense of asbestos-related, personal injury claims. Owens–Corning appeals the judgment. For the following reasons, we **REVERSE** and **REMAND** to the district court for further proceedings.

## I.

During the time that Affiliated FM's policy provided third-layer excess liability insurance coverage, from July 9, 1974 through October 22, 1976, Owens–Corning purchased a multi-layered insurance program for third-party claims and liabilities. Under this program, the primary insurance layers covered the payment of defense costs in addition to liability. The excess layers, including the Affiliated FM policy, covered a fixed percentage or quota share of the total limits contained in their respective layers. The excess layer policies, referred to as "following-form" policies incorporated by reference the terms and conditions of designated underlying policies.

Affiliated FM has indemnified Owens–Corning for asbestos claims under its policy; however, Owens–Corning demands Affiliated FM also pay attorneys' fees and other defense costs connected to the asbestos claims.

The two-page policy at issue includes the "Insuring Agreement," a "Definitions" section and a "Conditions" section. The Insuring Agreement provides that Affiliated FM will indemnify Owens–Corning "in accordance with the applicable insuring agreements of the Primary Insurance," but in the "Conditions" section of its policy limits this to the extent that the policies are not inconsis-

tent.[1] The Affiliated FM policy provides for coverage for loss subject to the limits of the excess liability coverage. The "Definitions" section of the policy defines loss as "the sums paid in settlement of losses" and "exclude[s] all expenses and costs." The section then defines costs as follows:

> ... interest on judgments, investigations, adjustment and legal expenses (excluding, however, all expense for salaried employees and retained counsel of and all office expense of the insured).

The district court construed the contractual language, finding that the Affiliated FM policy differed from the Primary Insurance policy in that it unambiguously excluded from coverage, the costs and expenses associated with Owens–Corning's defense of asbestos claims. We disagree.

## II.

■ We review de novo the district court's legal conclusion regarding ambiguity. *Construction Interior Sys., Inc. v. Marriott Family Restaurants, Inc.*, 984 F.2d 749, 755 (6th Cir.) (citation omitted), *cert. denied,* —— U.S. ——, 114 S.Ct. 194, 126 L.Ed.2d 152 (1993). We uphold the grant of summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc.*, 862 F.2d 597, 601 (6th Cir.1988). Because this declaratory judgment action is in federal court pursuant to diversity of citizenship, Ohio law applies. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, *cert. denied,* 305 U.S. 637, 59 S.Ct. 108, 83 L.Ed. 410 (1938).

■ Under Ohio substantive law, the courts construe insurance contracts in accordance with the same rules as other written contracts. *Rhoades v. Equitable Life Assurance Soc'y,* 54 Ohio St.2d 45, 374 N.E.2d 643,

644 (1978). An ambiguity exists "only where a term cannot be determined from the four corners of the agreement or where contract language is susceptible to two or more reasonable interpretations." *Potti v. Duramed Pharmaceuticals, Inc.,* 938 F.2d 641, 647 (6th Cir.1991). In construing a contract, a court not only must give meaning to every paragraph, clause, phrase and word, omitting nothing as meaningless, or surplusage; *Heifner v. Swaney,* 1992 WL 198120 (Ohio App. Aug. 27, 1992) (citing *Cincinnati v. Cincinnati St. R. Co.,* 24 Ohio Dec. 210 (1911)), it must consider the subject matter, nature, and purpose of the agreement. *Blosser v. Carter,* 67 Ohio App.3d 215, 586 N.E.2d 253 (1990); *Bennett v. Heidinger,* 30 Ohio App.3d 267, 507 N.E.2d 1162 (1986).

## III.

■ The parties in this case dispute the parameters of the word "loss" in the Insuring Agreement. Affiliated FM contends that the loss covered by the policy does not include Owens–Corning's defense costs because the policy defines loss to exclude costs and legal expenses. Affiliated FM submits that Condition 2 of the policy provides additional support for its position as it gives Affiliated FM the option to participate in defense or settlement of claims. Condition 2 of the policy requires that notice of any accident likely to involve its policy be given to Affiliated FM, which may opt to participate in the defense. Expense or costs incurred with both Affiliated FM's and Owens–Corning's consent results in liability for defense costs. Affiliated FM contends that the option to defend outlined in Condition 2 supports its position that it is not liable for defense costs unless it asserts its option.

Owens–Corning contends that the language in the Insuring Agreement, "loss subject to the limits," confirms that the only payments that apply to erode the policy limits are "loss" payments, and that defense costs are payable in addition to the policy limits. In addition, Owens–Corning argues that because the Primary Insurance policies

---

**1.** The Primary Insurance followed by the Affiliated FM policy included policies issued by Home Insurance Company from October of 1973 through October of 1974, and Aetna Casualty and Surety Company policies in effect from October of 1974 through October of 1976.

in effect throughout the time Affiliated FM's policy was in place covered defense costs, and because Affiliated FM's policy followed form, Affiliated FM's policy likewise covered defense costs. Further, Owens–Corning contends that at a minimum the policy coverage is made ambiguous by the parenthetical included in the definition of costs in the policy which excludes "all expense for salaried employees and retained counsel of and all office expenses of the insured." Finally, Owens–Corning contends that Condition 2 merely provides Affiliated FM with the option to defend, not the option to pay defense costs.

Even if we accept all of the arguments proffered by Affiliated FM, we nevertheless find the policy ambiguous. Neither the district court nor the parties were able to explain, without looking outside of the policy, why the definition of loss would carve out an exception for in-house or overhead expenses in a policy that excluded coverage for defense costs. We believe that the parenthetical, carving out an exception for in-house or overhead expenses in a policy that excludes coverage for legal expenses, cannot be ignored and requires some explanation. The exclusion of office expenses from the exclusion of legal expenses is incongruous in a contract that does not cover legal expenses.

Several other circuits have construed similar policies and reached different conclusions; however, their decisions are distinguishable. In *Continental Casualty Co. v. Pittsburgh Corning Corp.*, 917 F.2d 297 (7th Cir.1990), the Seventh Circuit examined the same policy language at issue here and concluded that the policy was unambiguous. The Seventh Circuit found the policy definition of cost could only be explained with reference to the "modular fashion" by which insurance companies draft policies, that is the insurance companies' practice of relying on previous terms rather than drafting new contract language. *Id.* at 300. Although it acknowledged that the policy parenthetical makes more sense if costs are covered, the Seventh Circuit nevertheless held that the parenthetical was an exclusion within an exclusion, and thus a nullity under Illinois law. *Id.* at 300. *Accord Chesapeake & Ohio Ry. Co. v. Certain Underwriters at Lloyd's London*, No.

85–3163 (D.D.C. Oct. 16, 1991) (construing similar policy and finding no obligation to pay for defense costs). The Second Circuit, in declaring that a policy similar to the one at issue here did not provide for payment of defense costs, found the parenthetical ambiguous but immaterial because the parties did not dispute that in-house expenses were not covered under the policy. *Home Ins. Co. v. American Home Prods. Corp.*, 665 F.Supp. 193 (S.D.N.Y.1987), *aff'd in part, rev'd in part*, 902 F.2d 1111, 1114 (2d Cir.1990) (holding that indemnification by excess liability insurer for punitive damages imposed on drug manufacturer contrary to public policy).

The application of Ohio law leads to a result different from that reached by either the Seventh or the Second Circuit. Under Ohio law, the parenthetical creates an ambiguity because contracts are not to be interpreted in a manner that renders any phrase surplusage. *Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd.*, 64 Ohio St.3d 657, 597 N.E.2d 1096 (1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1585, 123 L.Ed.2d 152 (1993). Under the policy, costs, which are excluded from coverage, include legal expenses but not expenses "for salaried employees, retained counsel of and all office expenses of the insured." This language cannot be selectively ignored. The parenthetical language does not contradict the other provision in the policy, but it nevertheless creates an ambiguity. Accordingly, the district court's failure to give effect to the inclusion of the parenthetical and find the policy ambiguous, is reversible error.

Therefore, we **REVERSE** and **REMAND** for consideration of extrinsic evidence as to the parties' intent regarding coverage of defense costs in this insurance policy.