**DARTRON CORPORATION, Plaintiff,**

v.

**UNIROYAL CHEMICAL COMPANY, INC., Defendant.**

**No. 1:94–CV–119.**

United States District Court, N.D. Ohio, Eastern Division.

Feb. 22, 1996.

Michael L. Hardy, David Michael Dumas, Thompson, Hine & Flory, Cleveland, OH, for plaintiff.

Charles R. McElwee, John Michael Rumpf, Squire, Sanders & Dempsey, Cleveland, OH, for defendant.

## *MEMORANDUM & ORDER*

O'MALLEY, District Judge.

Plaintiff Dartron Corporation ("Dartron") brings this action against defendant Uniroyal Chemical Company, Inc. ("Uniroyal"), claiming that Uniroyal contaminated property and then sold it to Dartron. The parties bring various claims against each other in an effort to allocate liability for necessary clean-up. As the Court recited in an earlier Order, the parties' claims are as follows:

Dartron brings the following claims against Uniroyal: (1) liability for any response costs required to remediate the property under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 U.S.C. § 9601 *et seq.* ("CERCLA"); (2) injunctive relief requiring Uniroyal to abate the hazardous conditions on the property, pursuant to the Resource Conservation and Recovery Act, 42 U.S.C. § 6901 *et seq.* ("RCRA"); (3) breach of the property sale agreement between the parties; (4) breach of an express warranty contained in the agreement; (5) negligence; (6) strict liability for ultrahazardous activities; (7) private nuisance; (8) continuing nuisance; (9) continuing trespass; and (10) declaratory judgment of liability under CERCLA. Uniroyal has counterclaimed against Dartron, alleging

that Dartron is liable to *it* for certain response costs it incurred pursuant to CERCLA.

*Dartron Corp. v. Uniroyal Chemical Co., Inc.*, 893 F.Supp. 730, 732 (N.D.Ohio 1995) (hereinafter referred to as *"First Dartron Order"*).

Earlier, the parties filed motions for partial summary judgment on some of these claims. In its *First Dartron Order*, the Court granted partial summary judgment, thereby reducing the number of disputed issues. Specifically, the Court granted summary judgment on all of Count I, part of Count V, all of Count VI, part of Counts VII, VIII, and IX, and all of Count X. The Court denied Dartron's motion for summary judgment on Uniroyal's counterclaim.[1]

The Court also stated in its *First Dartron Order* that still other issues appeared amenable to resolution via motion for summary judgment. The parties agreed, and have filed three motions for summary judgment regarding nearly all of the still-outstanding claims. Specifically, Uniroyal has moved for summary judgment on the remaining portions of Dartron's Counts V, VII, VIII, and IX (docket no. 53); Uniroyal has also moved for partial summary judgment on its own counterclaim (docket no. 54); and Dartron has moved for summary judgment on Counts III and IV, as well as renewed its motion for summary judgment on Uniroyal's counterclaim (docket no. 55). For the reasons stated below, Uniroyal's motion for summary judgment on the remaining portions of Dartron's Counts V, VII, VIII, and IX (docket no. 53) is **GRANTED**; Uniroyal's motion for partial summary judgment on its own counterclaim (docket no. 54) is **GRANTED IN PART AND DENIED IN PART**; and Dartron's motion for summary judgment on Counts III and IV is **GRANTED**, while its renewed motion for summary judgment on Uniroyal's counterclaim (docket no. 55) is **GRANTED IN PART AND DENIED IN PART**.

The Court will attend to all remaining matters as scheduled, beginning on March 4, 1996. The parties should contact the Court if they desire to discuss settlement before that date.

## I.

The Court has narrated the undisputed facts of this case, as well as the standard for ruling on motions for summary judgment, in its *First Dartron Order*, and will not repeat them here. *First Dartron Order*, 893 F.Supp. at 732–34, 736. To the extent the parties have mustered additional facts not recounted earlier, the Court will note them in its discussion below, where relevant.

### A. Counts III and IV—Breach of Contract and Breach of Express Warranty.

Dartron moves for summary judgment on its claims of breach of contract and breach of express warranty (docket no. 55). The Agreement by which Uniroyal sold the Property to Dartron[2] contained a provision stating that the Property was conveyed " 'As-is,' ... provided, however, that [Uniroyal] shall not leave any hazardous or toxic material on or under the [Property]." Agreement at ¶ 3(e). This Court has previously found that "[t]he only reasonable conclusion a fact finder could draw in this case, given the undisputed facts, is that Uniroyal owned or operated a facility at the time of disposal of a hazardous substance." *First Dartron Order*, 893 F.Supp. at 736. It is beyond dispute that when Uniroyal sold the Property to Dartron, there were (and still are) hazardous or toxic materials on or under the Property. It is also beyond dispute that Dartron has suffered damage because of the presence of contaminants on the Property. Dartron argues that, given these undisputed facts, it has proved breach of contract and breach of warranty as a matter of law.

---

1. As discussed below in section I(C) of this opinion, Uniroyal's counterclaim contains three separate counts. The Court's denial of Dartron's motion for summary judgment went to all three counts contained in the counterclaim.

2. The terms "Property," "Adjacent Property," "Agreement," "VC," "PVC," "Dartron," and "Uniroyal" were all defined by the Court in its *First Dartron Order*. Those terms are used with their same meaning here.

■ Uniroyal responds in three ways. First, Uniroyal argues that the terms "leave" and "hazardous or toxic material" contained in the provision are ambiguous, because they were not defined in the Agreement. Uniroyal insists that these terms may be construed in such a way that it did not "leave" any hazardous or toxic "materials" on the Property, and therefore that summary judgment is inappropriate. This argument deserves little discussion. The only way for any finder of fact to construe the relevant terms to conclude that Uniroyal did not "leave" any hazardous or toxic "materials" on the Property is for the fact finder to torture the plain meaning of the words. The Court holds that the terms are not ambiguous as a matter of law, and this defense fails.

Second, Uniroyal argues that the "as-is" clause must be read in conjunction with paragraph 3(d) of the Agreement. This provision states that the Property is transferred subject to "any state of facts an inspection of the [Property] would reveal." Uniroyal argues that: (1) paragraph 3(d) required Dartron to conduct a reasonable inspection of the Property; (2) any reasonable inspection would have revealed the presence of contaminants; and (3) therefore, the Agreement states Dartron accepted the property subject to the presence of contaminants. Uniroyal argues that to hold otherwise is to render paragraph 3(d) meaningless surplusage.

■ The Court disagrees with Uniroyal's conclusion. It is true that a contract must be construed in its entirety, in a manner that does not leave any phrase meaningless or surplusage. *Ohio Historical Society v. General Maintenance & Eng'g Co.,* 65 Ohio App.3d 139, 583 N.E.2d 340, 342–43 (Ohio Ct.App.1989); *Affiliated FM Ins. Co. v. Owens–Corning Fiberglas,* 16 F.3d 684, 686 (6th Cir.1994). But this rule applies equally to Uniroyal's argument as it does to Dartron's—just as the Court may not read the "as-is" provision in a manner that makes the "inspection" provision meaningless, neither may the Court read paragraph 3(d) in such a way as to make paragraph 3(e) meaningless. Uniroyal's reading of the Agreement effectively rewrites paragraph 3(e) to eliminate the "except" clause, and read simply "as-is."

Contrary to Uniroyal's assertions, the two provisions may be read together with each given full effect. Fundamentally, paragraph 3(d) addresses patent defects at the Property, while paragraph 3(e) addresses latent defects. With paragraph 3(d), the parties agreed that Dartron had a duty to reasonably inspect the Property to determine what its existing *observable* defects were, and accept the Property subject to whatever the inspection revealed. Indeed, Dartron did conduct two inspection tours of the Property. With paragraph 3(e), the parties agreed that Dartron would accept the Property with all its existing *hidden* defects, whatever they were, *except* that Uniroyal warranted there were no hazardous or toxic contaminants left on the Property. The inspection contemplated in paragraph 3(d) was not meant to require Dartron to uncover concealed defects. Thus, Uniroyal cannot avoid the promise it made in paragraph 3(e) by shielding itself with paragraph 3(d).

In its third defense to Dartron's breach of contract and breach of warranty claims, Uniroyal argues that, upon execution of the Property deed, the Agreement and any warranties it contains were merged into the deed. Uniroyal states that once this merger occurs, no cause of action based on the Agreement can be brought, as a matter of law.

■ The general rule is that a contract for the purchase of real estate is merged into the deed conveying the property. *Medeiros v. Guardian Title & Guaranty Agency, Inc.,* 57 Ohio App.2d 257, 387 N.E.2d 644 (1978). According to this general rule, once the "deed is delivered and accepted without qualification pursuant to agreement, no cause of action on the prior agreement thereafter exists." *Fuller v. Drenberg,* 3 Ohio St.2d 109, 209 N.E.2d 417, syllabus ¶ 1 (1965). An exception to this general rule, however, is that "agreements that are collateral to and independent of the main purpose of the transaction are obviously not intended to be merged in the deed." *Medeiros,* 57 Ohio App.2d at 259, 387 N.E.2d 644. The exception applies when transfer of title is only one of the many obligations in the purchase agreement; a party "does not give up the right to enforce

covenants which are not performed or satisfied by transfer of the deed." *Harris v. Burger*, 1995 WL 502541 at *3, 1995 Ohio App. LEXIS 3465 at *10 (Ohio Ct.App. Aug. 24, 1995) (citing *McGovern Builders, Inc. v. Davis*, 12 Ohio App.3d 153, 468 N.E.2d 90 (1983)). Specifically, "[a] promise that a dwelling is free from latent defects is a collateral stipulation not satisfied by transfer of the deed." *Id.*

In this case, Uniroyal's promise that it would "not leave any hazardous or toxic material on or under the [Property]" was not satisfied by transfer of the deed. This promise was essentially a warranty that the Property did not suffer from the latent defect of environmental contamination. Such a promise is a stipulation collateral to the promise to transfer title and the usual array of warranties regarding seizin, encumbrances, right to sell, defense of claims and demands by others, occupancy, size, enjoyment, and so on. *Brown v. Cuenca*, 1990 WL 20062 at *2 1990 Ohio App. LEXIS 783 at *5 (Ohio Ct.App. Feb. 28, 1990). Thus, Uniroyal's promise regarding hazardous and toxic materials did not merge into the deed by law. Dartron's claims for breach of contract and breach of warranty are not precluded by Uniroyal's later transfer of deed.

In sum, the undisputed facts show that Dartron is entitled to judgment on Counts III and IV of its complaint, as a matter of law. Accordingly, that part of Dartron's motion for partial summary judgment is GRANTED.

Having found that Uniroyal is liable to Dartron on Counts III and IV of the complaint, the Court must turn to the question of damages. The parties have not completed the assessment and remediation of the Property, so it is premature to assign a dollar value regarding damages for Uniroyal's breach of contract and breach of warranty; such an assessment must be made at trial. Nonetheless, Dartron argues that the Court should simply rescind the Agreement through which Uniroyal sold the Property to Dartron, and avoid a trial on the question of damages. The Court finds, however, that Dartron is not entitled to rescission.

As Dartron notes, rescission may provide the appropriate relief when the defendant makes a material misrepresentation which induces plaintiff to enter into a transaction to his detriment. *Brannon v. Mueller Realty & Notaries*, slip op., no. C–830876, 1984 WL 7018 (Ohio Ct.App. October 24, 1984) (citing *Mulvey v. King*, 39 Ohio St. 491 (1883)); *see also* Restatement (Second) of Contracts §§ 164, 165 (1981) (not requiring detriment as element of tort). In both its complaint and amended complaint, however, Dartron never makes any allegation that: (1) Uniroyal made any misrepresentation; (2) such a misrepresentation was material; or (3) the misrepresentation induced Dartron to purchase the Property. Although Dartron's prayer for relief does mention rescission, "[i]t is the cause of action set forth in a petition or complaint which is important and not the prayer." *Dari–Delite, Inc. v. Cleckner*, 147 F.Supp. 838, 841 (N.D.Ohio 1957); *see Smith v. Buckeye Incubator Co.*, 2 F.R.D. 134, 137 (S.D.Ohio 1940) ("[t]he facts alleged, the issues and proof, and not the form of prayer determine the nature of relief to be granted"). Simply, Dartron has never stated a cause of action for misrepresentation upon which the requested relief of rescission may be based. Dartron's arguments in support of rescission, made for the first time in this case during the second round of motions for summary judgment, come too late.

In addition, Ohio law states that "[t]he equitable relief of cancellation and rescission of a deed conveying real estate will not be granted for a mere breach of contract." *City of Cleveland v. Herron*, 102 Ohio St. 218, 131 N.E. 489, syllabus ¶ 1 (1921). A court should not "grant relief by the equitable remedy of cancellation [of a contract] whe[n] the plaintiff may obtain adequate and complete relief by the ordinary legal remedies." *Fehrman v. Ellison*, 32 Ohio App.2d 258, 290 N.E.2d 190, 192 (1971). Because the Court holds that Dartron may obtain adequate and complete relief though both damages and recovery of necessary response costs under CERCLA, Dartron's request for rescission is denied.

**B. Counts V, VII, VIII, and IX—Negligence, Private Nuisance, Continuing Nuisance, and Continuing Trespass.**

In its *First Dartron Order*, the Court granted partial summary judgment to Uniroyal on Counts V, VII, VIII, and IX. As the Court noted, Uniroyal is both the prior owner of the contaminated Property, as well as the owner of Adjacent Property. Dartron claimed in its complaint that Uniroyal's manufacturing operations on the Property and the Adjacent Property contaminated the Property, and brought claims of negligence, private nuisance, continuing nuisance, and continuing trespass. The Court found that these claims against Uniroyal *in its role as prior owner of the Property* all failed as a matter of law. However, the Court further found that it could not rule as a matter of law on those claims against Uniroyal *in its role as owner of the Adjacent Property*, because the record was insufficiently developed. *First Dartron Order*, 893 F.Supp. at 738–39, 741–42.

Uniroyal now moves for partial summary judgment on the remaining aspects of Counts V, VII, VIII, and IX, regarding Uniroyal's role as neighbor. Uniroyal offers evidence which it argues is undisputed and entitles it to judgment as a matter of law. Dartron counters that material facts remain in dispute. The Court finds that material facts do not remain in dispute, and Uniroyal is entitled to judgment as a matter of law on the remaining aspects of Counts V, VII, VIII, and IX.

The basis for Dartron's claims against Uniroyal-as-neighbor is that Uniroyal disposed of some of its manufacturing waste on property referred to as the "Area C Site," which borders the Property. Dartron alleges that the manufacturing waste dumped by Uniroyal at the Area C Site has migrated onto the Property through groundwater flow, and

Uniroyal is thus liable for negligence, nuisance, and trespass. Uniroyal responds that it cannot be liable to Dartron on these theories because: (1) it does not own the property where the Area C Site is located; and (2) the groundwater does not flow from the Adjacent Property toward the Property. Both of these defenses appear well-taken.

■ The Area C Site is located to the north of the Property, within what it is commonly referred to as the Diamond Shamrock Superfund Site. It is unclear to the Court who actually owns the land containing the Area C Site now, or whether Uniroyal ever owned that land; it is clear, however, that Uniroyal does not now own the land containing the Area C Site. Thus, *the Area C Site is not within the Adjacent Property*, as that term was defined by the Court in its *First Dartron Order*. Given that Uniroyal does not own the neighboring land whence the contaminants allegedly migrated, it cannot be liable as Dartron's neighbor for negligence, nuisance, or trespass. Dartron's argument that Uniroyal can still be held liable under these theories because it placed the contaminants onto the Area C Site, even though it does not *own* the Area C Site, seeks to stretch these causes of action too far.[3]

In addition, the undisputed facts show that no contaminants from the Adjacent Property migrated onto the Property via area groundwater. As noted, the Area C Site is to the north of the Property. Uniroyal's Adjacent Property lies to the south and east of the Property. Dartron's own environmental consultant determined that groundwater flow in the area moved generally to the southeast. It was this determination that served as the basis for Dartron's claim that some of the wastes Uniroyal discarded at the Area C Site may have migrated onto the Property. Given the juxtaposition of the Property and the Adjacent Property, migration of contami-

---

**3.** The analogy Uniroyal draws to demonstrate the weakness in Dartron's argument is a good one: Suppose that A builds a swimming pool on his property located adjacent to B's property, and then A sells his property to C. If the swimming pool begins to leak and flood B's property, B's action for nuisance or trespass should be against C, not A, [because] C is in control of the property from which the nuisance/trespass

emanates and, therefore, is in the best position to abate the problem. Whether C thereupon has an action against A is a separate question. Just as in the case of the swimming pool, Dartron's causes of action, if any, are against the present owner of the Area C Site, not [Uniroyal].
Reply Memorandum at 4.

nants via groundwater flow cannot have carried wastes from the Adjacent Property toward the Property.

Dartron attempts to avoid the determinations of its own environmental consultant by asserting that "the direction of the flow of groundwater on the Property may have changed due to seasonal influences." Dartron also asserts the groundwater flow may have changed direction because "water line leaks" on the Property have been repaired. This rank conjecture cannot serve to preclude summary judgment. Dartron is "required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial." *60 Ivy Street Corp. v. Alexander,* 822 F.2d 1432, 1435 (6th Cir.1987). Having failed to do so, Uniroyal's motion for summary judgment on Dartron's claims of negligence, private nuisance, continuing nuisance, and continuing trespass is well-taken, and the motion is GRANTED.

### C. *Uniroyal's CERCLA Counterclaim.*

In its *First Dartron Order,* the Court granted summary judgment to Dartron on Count I of its complaint, in which Dartron claimed Uniroyal was liable for any response costs required to remediate the property under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 U.S.C. § 9601 *et seq.* ("CERCLA"). The Court found that the undisputed facts showed that: (1) the Property is a "facility;" (2) a "hazardous substance" has been "released" on the Property; (3) Dartron has incurred recoverable "response costs;" and (4) Uniroyal is subject to liability because it "owned or operated a facility at the time of disposal of a hazardous substance." *First Dartron Order,* 893 F.Supp. at 735.

In the context of discussing Uniroyal's CERCLA counterclaim, the Court added that "the only evidence presented *so far* suggests that [necessary CERCLA response costs] are properly Uniroyal's [alone] to bear," because there was no evidence that Dartron itself or any other person had released hazardous substances onto the Property. *Id.* at 737 (emphasis in original). Uniroyal now asserts the undisputed facts show that Dartron itself is liable for some of the necessary CERCLA response costs, and moves for summary judgment on its CERCLA counterclaim. Dartron has filed a cross-motion for summary judgment on Uniroyal's counterclaim.

Uniroyal has set forth three specific counts in its counterclaim, each alleging that Dartron itself is liable for payment of some or all of the response costs required to remediate the Property. The first count alleges that Dartron is liable under 42 U.S.C. § 9607(a)(1 & 2), while the second count alleges Dartron is liable under 42 U.S.C. § 9613(f)(1). With its third count, Uniroyal essentially repeats its first two counts and seeks a declaratory judgment proclaiming that Dartron is liable for all those necessary response costs that Uniroyal might incur. Uniroyal and Dartron have filed cross-motions for summary judgment on the first two counts. The Court grants summary judgment to Dartron on count I of the counterclaim, and grants summary judgment to Uniroyal on count II.

#### 1. *Counterclaim I—Dartron's Liability Under 42 U.S.C. § 9607(a).*

Initially, Dartron insists that, as a matter of law, Uniroyal cannot proceed under § 9607(a) because it is limited to proceeding only under § 9613(f). "CERCLA provides for two different kinds of legal actions by which parties can recover some or all of the costs associated with clean-ups." *Kaufman & Broad–South Bay v. Unisys Corp.,* 868 F.Supp. 1212, 1214 (N.D.Cal.1994) (*"Unisys"*). Section 9607(a) provides for a cost recovery action, while § 9613(f) provides for a contribution action. *Id.; United Technologies v. Browning–Ferris Inds., Inc.,* 33 F.3d 96, 98 (1st Cir.1994) (*"United Technologies"*). The distinction is important because liability under § 9607(a) is joint and several, while liability under § 9613(f) is merely several. *Unisys,* 868 F.Supp. at 1214. In addition, though not relevant to the facts of this case, cost recovery actions carry a six year statute of limitations, while contribution actions carry a three year limitation period. *United Technologies,* 33 F.3d at 98.

■ The *Unisys* and *United Technologies* courts have recently clarified when the two different kinds of legal actions are appropriate. *"United Technologies* clearly holds that only innocent parties may bring cost recovery actions. . . . Thus, any and all responsible parties . . . are confined to bringing actions under § 9613(f)." *Unisys,* 868 F.Supp. at 1215. *See also United States v. Colorado & Eastern R. Co.,* 50 F.3d 1530, 1534–36 (10th Cir.1995) (a claim by a potentially responsible party ("PRP") against a second PRP, both of whom were PRPs under CERCLA by virtue of their past or present ownership of the property, was a contribution claim, regardless of label, and was controlled by § 9613(f), not § 9607(a)); *Plaskon Electronic Materials, Inc. v. Allied–Signal, Inc.,* 904 F.Supp. 644, 651–52 (N.D.Ohio 1995) (noting that the First, Fifth, Seventh and Tenth Circuits have all ruled that claims by one PRP against another must be brought pursuant to § 9613(f)).

■ Actions for full cost recovery under § 9607(a) may only be brought by: (1) federal or state governments; or (2) "innocent" private parties. *Id.* at 1215–16. One example of an innocent private party is "a neighboring landowner who incurs response costs as a result of a threatened release and migration of hazardous materials from adjacent property. In such a case, the landowner is not liable under CERCLA because he is neither a current nor a past owner or operator of a hazardous waste site." *Unisys,* 868 F.Supp. at 1215; *see Akzo Coatings, Inc. v. Aigner Corp.,* 30 F.3d 761, 764 (7th Cir.1994) (mentioning this example). Another example of an "innocent" private party allowed to proceed under § 9607(a) is one who, although otherwise potentially responsible for paying necessary clean-up costs, "can successfully assert one of the affirmative defenses enumerated in § 9607(b)." *Unisys,* 868 F.Supp. at 1216. These defenses are that the contamination was caused by an act of God, an

act of war, or an act or omission of a third party who has no privity with the defendant.

It is clear that Uniroyal does not fit into any category of entity allowed to pursue a cost recovery action under § 9607(a). Uniroyal is not an "innocent" private party: this Court has already found the undisputed facts compel a conclusion that "Uniroyal owned or operated a facility at the time of disposal of a hazardous substance." *First Dartron Order,* 893 F.Supp. at 736. And Uniroyal has not even argued that it falls within one of the classifications enumerated in § 9607(b). Thus, Dartron's argument is well-taken that Uniroyal is limited to pursuing a contribution claim under § 9613(f). Accordingly, Dartron's motion for summary judgment on the first count of Uniroyal's counterclaim is GRANTED.[4]

*2. Counterclaim II—Dartron's Liability Under 42 U.S.C. § 9613(f).*

■ A prerequisite for liability under § 9613(f) is status as a covered person under 9607(a). *United States v. Colorado & Eastern R. Co.,* 50 F.3d 1530, 1539 (10th Cir. 1995). As noted in the Court's *First Dartron Order,* CERCLA imposes liability for response costs which are incurred to remediate and remove hazardous substances upon four classes of "covered persons." Two of these classes are: (1) current owners or operators of a facility at which hazardous substances were disposed; and (2) any person who owned or operated a facility at the time of disposal of a hazardous substance. *First Dartron Order* at 735 (citing 42 U.S.C. § 9607(a)(1)–(2)). Uniroyal claims it is entitled to summary judgment on the issue of whether Dartron is liable in contribution for at least some of the necessary response costs, because the undisputed facts show Dartron falls into both of these categories— that is: (1) Dartron currently owns the Property; and (2) Dartron itself released hazardous substances on the Property during its ownership.

*Unisys,* 868 F.Supp. at 1216. Although Uniroyal has never made this argument, the Court concludes that as a matter of law and undisputed fact, Dartron also is limited to seeking recovery under § 9613(f), not § 9607(a). See section I(C)(2) of this opinion, *infra.*

---

4. The above analysis demonstrates that Dartron, itself, may be limited to bringing an action for contribution under § 9613(f), and not for cost recovery under § 9607(a). Dartron appears not to be an "innocent" private party because it is the current owner of a hazardous waste site.

Regarding the first category, Dartron responds that although it is the current owner of the Property, it is not liable under § 9607(a)(1) because it is an "innocent purchaser," as described in § 9607(b)(3). Dartron notes that "innocent purchaser" status provides a complete defense to ownership liability under § 9607(a)(1). Regarding liability under § 9607(a)(2), Dartron responds that, at the very least, there remain disputed facts whether Dartron itself disposed of hazardous substances on the Property. Indeed, Dartron argues in its cross-motion that the undisputed facts reveal Dartron *never* disposed of any hazardous substance on the Property.

■ The Court does not address the question of whether Dartron is liable under § 9607(a)(1), or instead is an innocent purchaser, because the Court finds that the undisputed facts show Dartron is liable under § 9607(a)(2).

Dartron has admitted that on at least one occasion (and probably many more), it spilled "used oil" on the ground. It is also undisputed that: (1) Dartron regularly handled scrap storage tanks that contained waste petroleum products and unidentified sludges and liquids, some of which may have spilled on the ground; (2) Dartron used solvents and degreasers to clean its equipment outdoors, and these substances (along with the grime they removed) were allowed to drip off of the equipment and soak into the ground; and (3) Dartron stored much of its scrap metal outdoors on the bare ground, unprotected from the elements, and rainwater (carrying metal oxides and other substances) dripped off the scrap metal into the ground. Despite these undisputed facts, Dartron attempts to avoid summary judgment regarding its status under § 9607(a)(2) with two related arguments. Noting that Uniroyal must adduce evidence showing beyond dispute that Dartron released a hazardous waste on the Property, Dartron argues that: (1) even if Uniroyal can show Dartron handled hazardous wastes, it cannot show beyond dispute that Dartron released them on the property; and (2) even if Uniroyal can show Dartron released certain substances on the Property, it cannot show beyond dispute that those substances were "hazardous wastes." Essentially, Dartron argues that what was hazardous it didn't spill, and what it spilled wasn't hazardous— or at least, Uniroyal cannot prove otherwise. The Court rejects this argument.

■ As noted earlier, it is undisputed that, at least once, Dartron spilled "used oil" on the Property. Spilling of a substance onto the ground qualifies as "disposal." 42 U.S.C. § 9601(29) (disposal includes the "spilling, leaking, or placing [of] any ... hazardous waste so that [it] may enter the environment"). 42 U.S.C.A. § 6903, subd. 3. A disposal of *any* detectable hazardous substance into the environment, regardless of amount, constitutes a release. *HRW Systems, Inc. v. Washington Gas Light Co.*, 823 F.Supp. 318, 340–41 (D.Md.1993).

■ Moreover, the "used oil" that Dartron released on its Property qualifies as "hazardous waste." Unadulterated petroleum products are *not* hazardous wastes under CERCLA. 42 U.S.C. § 9601(14) (excluding "petroleum including crude oil or any fraction thereof" from the definition of "hazardous substance"). However, substances that are *not inherent* in a petroleum product, but instead are added to the product during its use, are not protected by the "petroleum exclusion." *Niecko v. Emro Marketing Co.*, 769 F.Supp. 973, 981–82, *aff'd*, 973 F.2d 1296 (6th Cir.1992). Thus, spilling "virgin" motor oil on the ground is not a release of a hazardous waste under CERCLA, but spilling used motor oil—which contains substances not found in virgin motor oil—almost certainly is. *See New York v. Exxon Corp.*, 766 F.Supp. 177, 185–87 (S.D.N.Y.1991) ("the [Environmental Protection Agency] has stated that only *un*adulterated waste oils are excluded from the definition of hazardous substances"); *United States v. Western Processing Co. Inc.*, 761 F.Supp. 713 (W.D.Wash. 1991) (finding that spillage of waste oil and tank bottom sludge containing hazardous substances not normally found in petroleum products, or normally found in petroleum products but at lower levels, made CERCLA liability appropriate).

Dartron argues that even if spillage of waste oil is not shielded from liability by the

CERCLA petroleum exclusion, Uniroyal still must show that the used oil Dartron spilled *actually contained* hazardous substances not inherent in petroleum. Dartron further argues that Uniroyal has not made this showing because it has adduced only flimsy, circumstantial evidence that Dartron's spilled waste oil contained hazardous substances.

The primary reason Uniroyal can only point to circumstantial evidence that Dartron's spilled waste oil contained hazardous substances, however, is that the waste oil was never tested and is now absorbed into the soil and groundwater at the Property. The best Uniroyal can do is point to the actual presence at the Property of contaminants that are often found in waste oil. Uniroyal insists it is a fair inference that at least some of the contaminants found in the Property were placed there by Dartron; Dartron insists this inference is neither fair nor sufficient as grounds for imposition of summary judgment.

 The Court concludes that, *on the specific facts of this case,* Uniroyal's showing is sufficient to prove Dartron did dispose of hazardous waste at the Property. Given the chain of events present here, the Court finds that the burden must be on Dartron to show the used oil it spilled did *not* contain hazardous substances not normally inherent in petroleum. The Environmental Protection Agency *presumes to be hazardous* wastes from the interior of a tank that held a petroleum product. *United States v. Western Processing Co. Inc.,* 761 F.Supp. 713, 720–22 (W.D.Wash.1991); *see* 40 C.F.R. § 279.10 (detailing a part of this presumption). The only way to rebut this presumption is to test the waste oil and show it does not contain contaminants. This presumption makes perfect sense, as it furthers the goals of CERCLA to achieve prompt cleanup of hazardous waste sites and to impose the cost of cleanup on those responsible for the contamination. If a person has dumped waste oil onto a site that is later found to be contaminated with hazardous substances, that person cannot escape liability merely by arguing that there is no evidence the dumped waste oil actually contained a hazardous substance. Allowing such an argument would protect not only a simply negligent dumper of waste, but also a person who wilfully cast a blind eye to the possibility that the waste he was dumping contained dangerous contaminants.

Dartron did not undertake any tests of the liquids and other materials that it spilled from its scrap tanks onto the Property. That Dartron may not have believed it had any reason to conduct such a test, at the time the spill occurred, is immaterial. Thus, Dartron cannot rebut the presumption that those wastes contained hazardous materials. Dartron cannot shield itself from liability by pointing to a lack of data regarding the components of the spilled waste oil. The undisputed facts show that hazardous substances commonly found in used oil, including lead, are actually contaminating the Property. In the absence of evidence that the waste oil it spilled did *not* contain hazardous substances commonly found in used oil, it is fair to presume that it did. Given this presumption, a reasonable fact finder could only come to the conclusion that Dartron disposed of hazardous substances on the Property. In sum, the undisputed facts show Dartron is liable for some share of the necessary clean-up costs under § 9607(a)(2).

 Because both Uniroyal and Dartron are responsible for contamination of the Property, they are *both* "confined to bringing actions under § 9613(f)." *Unisys,* 868 F.Supp. at 1215. Although either might be found jointly and severally liable *to a government* for the entire amount of necessary clean-up costs, they are liable as defendants in this case only for their "individual, several, and equitable share of the recoverable costs." *Plaskon Electronic Materials, Inc. v. Allied–Signal, Inc.,* 904 F.Supp. 644, 652 (N.D.Ohio 1995). Essentially, each party is entitled to contribution from the *other* to the extent that it can demonstrate it paid more than its fair share of the necessary clean-up costs.[5]

---

5. The declaratory judgment granted to Dartron in the *First Dartron Order,* 893 F.Supp. at 742, is thus changed to read: "Uniroyal is *severally* (not jointly and severally) liable for all costs of response, consistent with the national contingency plan, incurred and to be incurred by Dartron in cleaning up the contamination at the Property."

The amount of each party's "fair share" depends on, among other factors: (1) the amount of hazardous waste each party released at the Property; (2) the degree of toxicity of the hazardous waste each party released at the Property; (3) the degree to which each party made efforts to prevent and/or contain any known release of hazardous wastes at the Property, at the time the releases occurred; and (4) the degree to which each party made efforts to remediate the release of hazardous substances at the Property after the time the releases occurred, including their cooperation with governmental authorities. The amount of each party's "fair share" pursuant to contribution liability is for the Court to decide as a matter of fact. *Hatco Corp. v. W.R. Grace & Co. Conn.*, 59 F.3d 400, 414 (3rd Cir.1995) ("in suits brought under 42 U.S.C. §§ 9607 or 9613(f)(1), the parties are not entitled to a jury trial").

## II.

In summary, the Court rules on the outstanding motions as follows: (1) Dartron is granted summary judgment on its claims of breach of contract and breach of express warranty, but its request for rescission based thereon is denied; (2) Uniroyal is granted summary judgment on Dartron's claims of negligence, private nuisance, continuing nuisance, and continuing trespass; (3) Dartron is granted summary judgment on Uniroyal's counterclaim for payment of necessary response costs under 42 U.S.C. § 9607; and (4) Uniroyal is granted summary judgment on its counterclaim for payment of necessary response costs under 42 U.S.C. § 9613(f).

These rulings, together with the Court's previous rulings in its *First Dartron Order*, leave completely determined the liability aspect of every count of Dartron's amended complaint except the RCRA claim contained in count II, which the parties never addressed. Also completely determined are the liability aspects of the first two counts of Uniroyal's counterclaim.

Still remaining are, among others, the questions of: (1) the measure of Dartron's damages on its breach of contract and breach of express warranty claims, to be determined by a jury; and (2) the apportionment of the parties' shares for contribution purposes under 42 U.S.C. § 9613(f), to be determined by the Court (possibly with the assistance of an advisory jury panel); and (3) whether the costs already incurred by Uniroyal are recoverable response costs (*see First Dartron Order*, 893 F.Supp. at 736–37), to be determined by the Court (possibly with the assistance of an advisory jury panel). These matters will be heard, as scheduled, beginning on March 4, 1996.

**IT IS SO ORDERED.**