**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 19a0447n.06

Case No. 18-4206

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Aug 22, 2019
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| WELLS FARGO BANK, N.A., | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| ALLSTATE INSURANCE COMPANY, | ) | COURT FOR THE NORTHERN |
| | ) | DISTRICT OF OHIO |
| Defendant-Appellant. | ) | |

**O P I N I O N**

**BEFORE:** SUTTON, McKEAGUE, and KETHLEDGE, Circuit Judges.

**McKEAGUE, Circuit Judge.** Wells Fargo Bank owned an insurance policy on an abandoned home that an arsonist set ablaze. Allstate Insurance Company refused to indemnify Wells Fargo for the loss, relying on a policy exclusion for damage caused by "vandalism or malicious mischief" after the property has been vacant for more than 30 days. Wells Fargo sued, arguing that other policy provisions confirm that fire damage is considered distinct from vandalism or malicious mischief. The district court agreed with Wells Fargo and entered summary judgment in its favor. We **AFFIRM**.

**I**

The facts leading to this insurance-coverage dispute and the policy provisions that govern the result are straightforward.

Our story begins with Antoniano Delsignore, though his role is limited. In September 2010, Delsignore took out a mortgage from Wells Fargo on his home in Poland, Ohio. Delsignore purchased a homeowner's insurance policy from Allstate, with Wells Fargo listed as the insured mortgagee. Delsignore defaulted in 2013, and Wells Fargo foreclosed.

In February 2014, an unknown arsonist set fire to the property. Wells Fargo filed a claim with Allstate for the damage caused by the arson. Allstate denied the claim under a provision in the policy that excludes coverage for damage caused by vandalism or malicious mischief if the loss occurs after the property has been vacant or unoccupied for more than 30 consecutive days.

The homeowner's policy provides coverage in three parts: (1) dwelling protection, (2) other structures protection, and (3) personal property protection. The only one directly at issue here is dwelling protection, specifically a provision excluding coverage for loss "consisting of or caused by":

> 6. Vandalism or Malicious Mischief if your dwelling is vacant or unoccupied for more than 30 consecutive days immediately prior to the vandalism or malicious mischief.

The terms "vandalism" and "malicious mischief" are not defined, but Allstate determined that arson fell within them and thus denied Wells Fargo's claim under the exclusion.

Looking elsewhere in the policy, the district court concluded otherwise. Mindful that isolated terms in a contract should be interpreted with an eye toward a coherent whole, the district court examined the coverage and exclusions for personal property. Because loss resulting from "fire" was specifically addressed there, even though a similar "vandalism or malicious mischief" provision was present, the district court concluded that arson could fit within the fire provision just as easily as it could within the vandalism or malicious mischief provision. That made it unclear whether damage resulting from arson (a fire, after all) fell under the "vandalism or malicious

mischief" exclusion for dwelling protection. The district court found further support for Wells Fargo's position in the policy's arson-reward provision, which discusses arson in connection with a fire loss, not a vandalism loss. Accordingly, the district court granted summary judgment to Wells Fargo.

Allstate appealed, but the appeal was premature, as the district court had yet to address Wells Fargo's demand for breach-of-contract damages. Because the district court's grant of summary judgment did not constitute a final judgment under 28 U.S.C. § 1291, we dismissed the appeal for lack of jurisdiction. *See Wells Fargo Bank, N.A. v. Allstate Ins. Co.*, 735 F. App'x 208 (6th Cir. 2018). On remand, the parties jointly stipulated to a damages figure, and the district court again entered judgment in favor of Wells Fargo.

Allstate again appeals the district court's grant of summary judgment.

## II

### A.      Standard of Review

First, some preliminaries. We review the district court's summary judgment order de novo. *Lexicon, Inc. v. Safeco Ins. Co. of Am.*, 436 F.3d 662, 667 (6th Cir. 2006). Summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In reviewing a motion for summary judgment, we must view the evidence in the light most favorable to the non-moving party. *Escher v. BWXT Y-12, LLC*, 627 F.3d 1020, 1025 (6th Cir. 2010).

Whether summary judgment was appropriate here turns on the application of Ohio contract law. *Affiliated FM Ins. Co. v. Owens-Corning Fiberglas Corp.*, 16 F.3d 684, 686 (6th Cir. 1994) (applying state substantive law on exercise of diversity jurisdiction). "An insurance policy is a contract whose interpretation is a matter of law" for judges, not juries, to decide. *Sharonville v.*

*Am. Emp. Ins. Co.*, 846 N.E.2d 833, 836 (Ohio 2006). While Ohio courts have not confronted the question whether arson is categorically encompassed by "vandalism or malicious mischief," Ohio law's interpretive principles guide us to the answer in this case. "[W]ords and phrases used in an insurance policy must be given their natural and commonly accepted meaning," *Gomolka v. State Auto. Mut. Ins. Co.*, 436 N.E.2d 1347, 1348 (Ohio 1982), "unless another meaning is clearly apparent from the contents of the policy," *Westfield Ins. Co. v. Galatis*, 797 N.E.2d 1256, 1261 (Ohio 2003). Put differently, if words carry some "special meaning manifested in the contractual context," that understanding trumps the man-on-the-street's. *Gomolka*, 436 N.E.2d at 1351. Accordingly, the meaning of a disputed contract term "must be derived . . . from the instrument as a whole, and not from detached or isolated parts thereof." *Id.* In the end, if we cannot ascertain the parties' intended meaning and the disputed term remains "reasonably susceptible of more than one interpretation," the ambiguity "will be construed liberally in favor of the insured." *Laboy v. Grange Indem. Ins. Co.*, 41 N.E.3d 1224, 1227 (Ohio 2015).

### B. Analysis

We begin with the words themselves, *Sunoco, Inc. (R & M) v. Toledo Edison Co.*, 953 N.E.2d 285, 293 (Ohio 2011), though they leave us at an unhappy impasse. On the one hand, as Allstate urges, the "usually accepted meanings of the words used" suggest arson should qualify as vandalism.[1] *Black's Law Dictionary* (11th ed. 2019) defines arson as the "malicious burning of someone else's dwelling house . . . ." The same source defines vandalism as the "[w]illful or ignorant destruction of public or private property." *Webster's Third New International Dictionary* (1986), meanwhile, defines arson as "the willful and malicious burning of or attempt to burn any building, structure, or property of another." It defines "vandalism" as the "willful or malicious

---

[1] Allstate does not argue that arson constitutes "malicious mischief," but rather focuses its argument exclusively on "vandalism."

destruction or defacement of things of beauty or of public or private property." If vandalism is, at bottom, the intentional destruction of property, arson seems like one (particularly pernicious) way to accomplish that objective.

On the other hand, when someone intentionally sets fire to the property of another, would anyone—especially those steeped in legal parlance, like the lawyers who drafted this insurance contract—characterize that act as "vandalism"? Probably not. We have a well-established term of art for that: arson. Contrast arson with other, archetypal acts of vandalism. A rebellious youth throwing a brick through a window? A small-time gang spray painting a train car? Some bored teenagers "toilet-papering" their math teacher's house? "Vandalism" would roll off our tongues. Yet that word would be far from the first to describe the act of burning down a person's dwelling. Indeed, we think one would describe arson as vandalism about as regularly as one would call murder a battery—which is to say almost never. Though the former act in each instance cannot be completed without the latter, that does not mean one would interchange the terms in everyday speech. This points up the difficulty in deciding this case on the words alone.

So we broaden our search for connotative clues. *Gomolka*, 436 N.E.2d at 1351 (instructing courts to define contract terms by reading the "instrument as a whole"). Like the district court, we find two bits of context crucial. The first is that the policy's personal property coverage section lists fire loss separately from loss caused by vandalism or malicious mischief. Wells Fargo contends that if the vandalism term did not subsume fire damage in that section of the policy, it cannot do so for the dwelling coverage at issue here. The second contextual feature is the policy's arson-reward provision, which contains the policy's lone mention of "arson," but does so in connection with fire (not vandalism or malicious mischief) loss. The first piece of context dampens Allstate's plain-meaning argument; the second drowns it out altogether. We consider each in turn.

Because the meaning of disputed terms must be determined from the contract as a whole, *Gomolka*, 436 N.E.2d at 1351, identical terms should ordinarily have the same meaning throughout the contract. Here, Wells Fargo notes that the "vandalism or malicious mischief" term appears in both the personal property and dwelling sections of the policy. Yet the personal property section—a "named-peril" section—separately lists fire loss. Wells Fargo argues, and the district court agreed, that the separate treatment of fire and vandalism informs the meaning of the vandalism exclusion for the dwelling protection section of the policy. If "fire" and "vandalism or malicious mischief" are treated as separate phenomena for the purposes of personal property coverage, the argument goes, they ought to be treated separately for the purposes of dwelling protection. Or put more precisely, if "vandalism or malicious mischief" doesn't encompass all fires in one section of the policy, it cannot capture all fires in another section of the policy. Were it otherwise, the policy's separate listing of fire and vandalism loss would be superfluous. *Affiliated FM Ins. Co.*, 16 F.3d at 686 ("In construing a contract, a court . . . must give meaning to every paragraph, clause, phrase and word, omitting nothing as meaningless, or surplusage."). But that not all fires are vandalism is an obvious point. The more essential takeaway from the policy's separate listing of fire and vandalism is that it presents two potential landing spots for arson, teeing up the question of which is the more natural fit.

That brings us to the second, and we think decisive, bit of context: the policy's arson-reward provision. It contains the policy's sole reference to arson, and it provides that Allstate will pay "for information leading to an arson conviction in connection with a *fire loss* to property covered under Section I of this policy." If Allstate were correct that arson should be read as a subset of "vandalism or malicious mischief"—and not "fire" loss—it is odd that the only mention of arson in the policy is in connection with a fire loss, and not a vandalism loss. *Sunoco*, 953

N.E.2d at 293 ("Under the doctrine of noscitur a sociis, the meaning of an unclear word may be derived from the meaning of accompanying words."). If the policy meant what Allstate says it does—that arson is vandalism—we might expect the arson-reward provision to read "in connection with a *vandalism or malicious mischief loss* to property" or avoid categorizing the loss at all. But it does not; instead, the words around the policy's lone reference to arson indicate that arson is at least sometimes, if not always, considered a fire loss. *Accord Johnson v. State Farm Fire & Cas. Co.*, No. 278267, 2008 WL 4724322, at *4 (Mich. Ct. App. Oct. 28, 2008).

Allstate's response fails to rekindle its argument. It asserts that the arson-reward provision "has no bearing on whether arson is to be considered vandalism" since it is "not found in either" the personal property or dwelling sections of the policy. True enough, but the provision by its terms applies to *all property* covered under the policy. And in any event, there is no rule that we cannot look to policy terms in one section of an insurance policy to inform the meaning of a term in another section of the policy; just the opposite is true. *Gomolka*, 436 N.E.2d at 1351 (courts must interpret contract terms in light of "the instrument as a whole"). Allstate also argues that the arson-reward provision is irrelevant "due to the fact that there is no coverage for such losses pursuant to the vandalism and malicious mischief exclusion." But this merely assumes the conclusion. Again, the interpretive question we are trying to answer is *whether* arson is a vandalism or fire loss under the policy; the fact that the policy's only mention of arson comes in the context of a "fire loss" suggests the latter. Finally, Allstate contends that the arson-reward provision is "not definitional." We agree, to an extent. This provision is not a *categorical* indication that the policy considers arson to be a fire, rather than vandalism, loss. But it is at least a *clue* suggesting that interpretation and thus contributes to the policy's ambiguity on this question. And ambiguity, remember, is all Wells Fargo must show to prevail in this case.

One last point. Allstate spends a good deal of its brief discussing the vacancy condition in the vandalism or malicious mischief provision—the 30-day rule that demarcates when vandalism loss ceases to be covered. Allstate may be right that the impetus for the vacancy condition is "common sense." We do not doubt that abandoned buildings are far more susceptible to vandalism than occupied ones. Nor do we question the wisdom of insurers disclaiming responsibility for vandalism to such buildings. We even grant Allstate's argument that if there is any damage to an abandoned building an insurer would be worried about, arson's destructive potential puts it at the top of the list. But Allstate misses the point. Its argument explains the rationale behind the vacancy condition, but it does not help us determine whether arson is considered a fire loss or a vandalism loss under the policy. And at any rate, the fact that arson carries the most destructive potential of any purported act of vandalism only makes it *more* confounding that the policy does not more explicitly account for it. After all, Allstate has proven it knows how to do so. *McPherson v. Allstate Indem. Co.*, No. 3:11CV638-WHA, 2012 WL 1448049, at *3 (M.D. Ala. Apr. 26, 2012) (involving policy excluding coverage for "vandalism, or loss caused by fire resulting from vandalism"); *Bethel v. Allstate Indem. Co.*, No. 11-13664, 2012 WL 1060112, at *2 (E.D. Mich. Mar. 29, 2012) (same).

Without such clear language, and in light of other indications in the policy that arson could be considered a fire (not vandalism) loss, we cannot say that the policy unambiguously permits Allstate to deny coverage for arson under the vandalism exclusion. We are made more certain of this conclusion given Ohio's rule of thumb that "an exclusion in an insurance policy [should] be interpreted as applying only to that which is *clearly* intended to be excluded." *Sharonville*, 846 N.E.2d at 836 (citation and quotations omitted). Instead, the furthest we can go—and what we hold today—is that the policy is ambiguous with respect to whether this particular arson is a

covered or excluded loss. This is cold comfort to Allstate, as we must resolve the ambiguity in favor of the insured, Wells Fargo. *See Laboy*, 41 N.E.3d at 1227 (noting that words "reasonably susceptible of more than one interpretation will be construed liberally in favor of the insured").

## III

The district court's grant of summary judgment to Wells Fargo is affirmed.